IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN E. GRIFFIN, | : | |
|     Plaintiff | : | |
| | : | No. 1:18-cv-01155 |
| v. | : | |
| | : | (Judge Rambo) |
| OFFICER MALISKO, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court is Defendants' motion to dismiss Plaintiff's complaint (Doc. No. 4), and Plaintiff's motion to remand this action to the Court of Common Pleas of Schuylkill County, Pennsylvania (Doc. No. 7). For the reasons set forth below, the Court will deem Plaintiff's motion to remand as withdrawn, grant Defendants' motion to dismiss, and direct the Clerk of Court to close this case.

**I.  BACKGROUND**

Pro se Plaintiff Brian E. Griffin ("Plaintiff"), an inmate currently housed at the State Correctional Institution Mahanoy, Pennsylvania ("SCI-Mahanoy"), initiated the above-captioned action on May 14, 2018, by filing a complaint in the Court of Common Pleas of Schuylkill County, Pennsylvania. (Doc. No. 1-1.) Defendants filed a notice of removal on June 6, 2018 (Doc. Nos. 1 and 10-1), and a motion to dismiss on June 13, 2018 (Doc. No. 4).

Plaintiff's complaint names Officer Malisko ("Malisko") and Unit Manager Carey ("Carey"), employees at SCI-Mahanoy, as the two Defendants in this matter.

(Doc. No. 1-1 at 1, 2.)  Plaintiff alleges that on December 20, 2017, he was confronted by Carey while walking to the law library.  (Id. at 4.)  Carey allegedly questioned Plaintiff about a letter he wrote to Executive Deputy Secretary Shirley R. Moore-Smeal at the Department of Corrections' ("DOC") Central Office complaining about Malisko.  (Id.)  Plaintiff alleges that the letter related to Malisko being "nasty" towards Plaintiff and further questioned why Malisko was not rotated throughout the prison like other corrections officers.  (Id.)  Plaintiff claims that the following day, December 21, 2017, he was moved to a handicap cell in SCI-Mahanoy that had brown water and no hot water.  (Id. at 4, 7.)

Plaintiff maintains that the December 21, 2017 cell reassignment was done in retaliation for the letter he sent to Secretary Moore-Smeal complaining about Malisko.  (Id. at 5-7.)  Plaintiff also claims that he was retaliated against by U.M. Holly, who is not named as a defendant, when Holly "stripp[ed] [him] of his job."  (Id. at 8, Ex. F.)  Additionally, Plaintiff alleges a violation of the Pennsylvania Constitution Article 1, Section 7.  (Id. at 7.)  He seeks compensatory and punitive damages.  (Id. at 8.)

## II. STANDARD OF REVIEW

### A. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified

the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of pro se prisoner litigation specifically, the court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B. Civil Rights Statute, 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., No. 3:cv-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

## III. DISCUSSION

### A. Retaliation Claims

Plaintiff alleges that Defendants retaliated against him for writing a letter to Secretary Moore-Smeal complaining about Malisko. The First Amendment offers

5

protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Id. (quoting Allah, 229 F.3d at 225). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." Id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity support an inference of causation on its own. Krouse v. Am. Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If the prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show by a preponderance of the evidence that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

With respect to the first and second Rauser prongs:

> Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting – whether activity is "protected" or an action is "adverse" will depend on context. . . . Standing in his cell in a prison, an inmate is quite limited in what he can say; his government jailor can impose speech-limiting regulations that are "reasonably related to legitimate penological interests." The fact that certain conduct of the plaintiff must be "protected" in order to state a claim does not change with

7

> the setting – what changes is the type of conduct deemed protected in that particular setting.

Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (quoting Turner, 482 U.S. at 89). "Thus, a prison inmate 'retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)).

Plaintiff alleges that he was subjected to the adverse action of a cell reassignment to the "other side" of SCI-Mahonoy. It is well-established that an inmate does not have a constitutional right to any particular custody or security classification. See Montanye v. Haymes, 427 U.S. 236, 242 (1976); see also Moody v. Daggett, 429 U.S. 78, 88 (1976). Prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976). However, cell transfers to undesirable areas of a prison could have a strong deterrent effect. See Thaddeus-X, 175 F.3d at 399 (finding that placement in area of prison used to house mentally disturbed inmates combined with harassment and physical threats could constitute a sufficient adverse action for retaliation purposes); Allah, 229 F.3d at 225-56 (holding that continued placement in administrative confinement

8

which resulted in reduced privileges could deter a person of ordinary firmness from exercising his First Amendment rights). Whether a prisoner has met this prong of his retaliation claim will depend on the factors of the particular case. Allah, 229 F.3d at 225.

Plaintiff has not satisfied the adverse action element of his retaliation claim because his transfer from one cellblock to another similar cellblock is insufficient to deter a person of ordinary firmness from exercising his constitutional rights. See Dillard v. Talamantes, No. 1:15-cv-974, 2018 WL 1518565, at *11 (M.D. Pa. Mar. 28, 2018) (holding that moving plaintiff to a different cell "cannot be considered 'adverse actions' sufficient to deter a person of ordinary firmness from exercising his constitutional rights); Keeling v. Barrager, No. 4:cv-11-0365, 2014 WL 1338077, at *9-10 (M.D. Pa. Apr. 3, 2014) (stating that transferring an inmate from one cellblock to another, without any facts inferring that life on one block is any different from or less agreeable than life on the other, is insufficient to deter a person of ordinary firmness from exercising his constitutional rights). Temporary inconveniences likewise do not meet this standard. See Owens v. Coleman, 629 F. App'x 163, 167 (3d Cir. 2015) ("Owens' mere assertion that Appellees retaliated against him by placing him in a cell with a faulty shower does not meet these elements."). Plaintiff has not alleged any facts from which it could be inferred that

9

life in his initial cellblock was any different from or less agreeable than life in the other.¹ Additionally, in accepting as true all factual allegations set forth in the complaint, it is also clear that Plaintiff was not deterred from exercising his First Amendment rights by any alleged adverse action taken by Defendants because he provides that once transferred to the other cell, he filed a grievance concerning this event. (Doc. No. 1-1 at 11.) See Brown v. Hannah, 850 F. Supp. 2d 471, 479 (M.D. Pa. Feb. 6, 2012). Consequently, there is no basis upon which to permit this claim for retaliation to proceed.

To the extent Plaintiff raises a conditions of confinement claim related to the brown water in his cell, the Court notes that while "[t]he Constitution 'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the

---

¹ Plaintiff alleges that the water was brown when he arrived at his new cell. (Doc. No. 1-1 at 6.) However, Plaintiff does not allege for how long the water was allegedly brown. Moreover, it is clear from the complaint that Plaintiff suffered no physical harm from the brown water. It also appears that Plaintiff was only temporarily housed in this cell, as he alleges that he was moved off of that cell's unit. (Id.) The Court finds that Plaintiff's "contextually non-specific and temporally indeterminate" claim about brown water in his cell not resulting in any physical harm fails to rise to the level of a constitutional violation, as it does not demonstrate the denial of the minimal civilized measure of life's necessities. See Pritchett v. Camden Cty. Corr. Facility, No. 16-cv-08241, 2018 WL 1522713, at *4-5 (D.N.J. Mar. 28, 2018) (stating that "the mere fact that the water hue in a jail cell was somewhat different (on isolated occasions during a discrete period of time) from the color to which Plaintiff was otherwise accustomed, is not, without more, sufficient to rise to the level of a constitutional violation").

Eighth Amendment.'" Farmer, 511 U.S. at 832 (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). Under Farmer, conditions of confinement violate the Eighth Amendment if the following two criteria are met: (1) the deprivation is objectively, sufficiently serious; and (2) the prison official was deliberately indifferent to an inmate's health or safety. Id. at 834, 837. Stated simply, an Eighth Amendment violation exists when the prisoner is denied "the minimal civilized measure of life's necessities" and the prison official acted with recklessness. Id. at 834-35 (quoting Rhodes, 452 U.S. at 347); see also Wilson v. Seiter, 501 U.S. 294, 303 (1991). In order to find an Eighth Amendment violation as to conditions of confinement, the evidence must show that the prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the prison official must also draw the inference." Id. at 837.

Plaintiff's complaint fails to establish that he has suffered a sufficiently serious constitutional deprivation, as required by Farmer. For instance, while Plaintiff alleges that when he was first moved to the new cell, "brown water was coming out of the sink[], in which [he] washed [his] face, drank[], and . . . brushed [his] teeth" (Doc. No. 1-1 at 6), Plaintiff has not averred that he suffered from any actual injury resulting from the alleged brown water, and thus, has not established

a constitutional violation.  See Knight v. Wapinsky, Civ. No. 12-2023, 2013 WL 786339, at *5-6 (M.D. Pa. Mar. 1, 2013) (finding that plaintiff's failure to allege any injury resulting from the alleged deprivation, there is no constitutional violation); Williams v. Campbell, Civ. No. 7-885, 2008 WL 2816089 (E.D. Pa. July 18, 2008); Mower v. Dauphin Cty. Prison, Civ. No. 05-0909, 2005 WL 1322738, at *5 (M.D. Pa. June 1, 2005); see also Pritchett, 2018 WL 1522713, at *5 (stating that "the mere fact that the water hue in a jail cell was somewhat different (on isolated occasions during a discrete period of time) from the color to which Plaintiff was otherwise accustomed, is not, without more, sufficient to rise to the level of a constitutional violation").

Plaintiff also alleges that his job was "taken" from him in retaliation for writing a letter to Secretary Moore-Smeal complaining about Malisko.  (Doc. No. 1-1 at 6-8, Ex. F.)  Specifically, in a December 28, 2017 grievance attached as Exhibit F to Plaintiff's complaint, Plaintiff alleges that his job was "just taken from [him]" and that U.M. Holly "took [Plaintiff's] job for no other reasons but retaliation."  (Id. Ex. F.)  The Third Circuit has expressly recognized that the loss of employment may qualify as an adverse action.  See Mack v. Yost, 427 F. App'x 70, 72-73 (3d Cir. 2011); see also Allah, 229 F.3d at 225.

While the Court finds that Plaintiff has sufficiently alleged adverse action in the form of loss of employment, he claims that U.M. Holly was the individual who retaliated against him in the form of taking away his job, not Defendants Malisko or Carey. (Doc. No. 1-1, Ex. F.) However, Plaintiff has not named U.M. Holly as a Defendant in this action, and in his complaint, he unambiguously states that U.M. Holly "was not named as a defendant in this complaint because [P]laintiff did not exhaust his administrative remedies against him."[2] (Id. at 6.) Moreover, the

---

[2] The Supreme Court has explicitly provided that all prisoners must exhaust their administrative remedies as to any claim that arises in the prison setting, regardless of the kind of relief sought. See Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, the exhaustion of available administrative remedies is required before filing a civil rights action under § 1983. See Perazzo v. Fisher, Civ. No. 11-1505, 2012 WL 1964419 (M.D. Pa. May 31, 2012) (citing 42 U.S.C. § 1997(e)(a)); Jones v. Lorady, Civ. No. 11-666, 2011 WL 2461982 (M.D. Pa. June 17, 2011) (dismissing prisoner complaint sua sponte for failure to exhaust administrative remedies prior to initiating federal action). "[I]t is beyond the power . . . of any [court] to excuse compliance with the exhaustion requirement" of § 1997(e). Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000); see also Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004).

While the exhaustion requirement is an affirmative defense that must be pleaded and proven by the defendants, and a prisoner need not allege that he has exhausted his administrative remedies, Jones, 549 U.S. at 216, the Court may sua sponte dismiss an action where the Plaintiff's failure to exhaust is clear on the face of the complaint. McPherson v. United States, 392 F. App'x 938 (3d Cir. 2010); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002); see also Booth v. Churner, 2016 F.3d 289 (3d Cir. 2000) (affirming sua sponte dismissal where prisoner plaintiff conceded that he did not exhaust administrative remedies); Perazzo, 2012 WL 1964419, at *1 (dismissing case sua sponte for failure to exhaust administrative remedies where plaintiff indicated in the complaint that the grievance process was not complete but was at the "last stage").

Here, Plaintiff admits on the face of his complaint that he did not name U.M. Holly as a defendant in this matter because he did not exhaust his administrative remedies against him prior to filing the instant action. (Doc. No. 1-1 at 6.) Because the Prison Litigation Reform Act ("PLRA") requires exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements, affording Plaintiff leave to amend his complaint to add U.M. Holly as a defendant would be futile given his failure to exhaust this claim. See Foman v. Davis, 371 U.S. 178, 182 (1962).

13

complaint contains no allegations of personal involvement of either Defendant Malisko or Carey in the alleged "taking" of Plaintiff's job, and liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode); Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007). Consequently, because Plaintiff has not, and cannot, for purposes of the instant action, name U.M. Holly as a Defendant because he has not exhausted his remedies against him, and because the allegations in the complaint allege that it was U.M. Holly that removed Plaintiff from his job and not Defendants Malisko or Carey, Plaintiff's retaliation claim will be dismissed.

### B. Damages Barred by the Prisoner Litigation Reform Act

The Prison Litigation Reform Act of 1995 ("PLRA"), provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citation

omitted). In order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate less than significant, but more than a de minimis physical injury. See 42 U.S.C. § 1997e(e); see also Mitchell v. Horn, 318 F.3d 523, 535 (3d Cir. 2003).

The allegations within Plaintiff's complaint fail to demonstrate either a physical injury resulting from the alleged retaliation or anything constituting a "sexual act" under 18 U.S.C. § 2246(2). Even if Plaintiff stated a constitutional violation, he is unable to recover compensatory damages because he failed to suffer a physical injury. See Rager v. Delbalso, No. 3:15-cv-2343, 2016 WL 2610019, at *2 (M.D. Pa. May 6, 2016).

### C. Damages Under the Pennsylvania Constitution

To the extent that Plaintiff seeks damages under the Pennsylvania Constitution, the Court will dismiss this claim for damages. "The prevailing view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation[s] of the Pennsylvania Constitution." Gary v. Braddock Cemetery, 517 F.3d 195, 207 n.4 (3d Cir. 2008); see Dillon v. Homeowner's Select, 957 A.2d 772, 780 n.11 (Pa. Super. Ct. 2008) (quoting Jones v. City of Phila, 890 A.2d 118, 1208 (Pa. Commw. Ct. 2006), appeal denied, 589 Pa. 741 (Pa. 2006) ("To date, neither Pennsylvania statutory authority, nor appellate case

law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution."). Accordingly, Plaintiff's claims for damages under the Pennsylvania Constitution fail as a matter of law and will be dismissed. See Real v. Dunkle, No. 3:11-cv-2071, 2014 WL 7335039, at *8-9 (M.D. Pa. Dec. 19, 2014); Stockham Interests, LLC v. Borough of Morrisville, Civ. No. 08-3431, 2008 WL 4889023, at *10 (E.D. Pa. Nov. 12, 2008) (holding that "there is no private cause of action for damages arising from violations of the Pennsylvania Constitution").

### D. Plaintiff's Motion for Remand

On June 21, 2018, Plaintiff filed a motion for remand claiming that this action was improperly removed from state court and that this Court does not have jurisdiction over its claims. (Doc. No. 7 at 2.) Accordingly, Plaintiff moves this Court to remand this matter to state court. (Id.) Local Rule 7.5 provides that "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. . . . If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn." L.R. 7.5. Here, Plaintiff has failed to file a brief in support of his motion for remand and therefore, the Court deems Plaintiff's motion withdrawn.

Even if the Court considered the merits of Plaintiff's motion, the same would be denied. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States." Thus, a defendant may remove from state court to federal court any civil case arising under federal law. See 28 U.S.C. § 1441(b).

Upon a motion to remand a removed action, the removing party bears the burden of demonstrating that removal was proper. Scanlin v. Utica First Ins. Co., 426 F. Supp. 2d 243, 246 (M.D. Pa. 2006) (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)). "The party asserting jurisdiction bears the burden of showing the action is properly before the federal court." Id.

In considering a motion to remand, the statute governing removal, 28 U.S.C. § 1441, "must be strictly construed against removal." Id. (citing Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005) (citations omitted)). Moreover, ruling on the removal of any action is the prerogative of the federal courts. Id. (citing Harrison v. St. Louis & S.F.R. Co., 232 U.S. 318, 329 (1914) ("as the right given to remove by the United States law is paramount, it results that it is also of the essence of the right to remove, that when an issue of whether a prayer for removal was rightfully asked arises, a Federal question results which is

determinable by the courts of the United States free from limitation or interference arising from an exertion of state power")). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand." Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). Moreover, the notice of removal must be filed within 30 days of the defendant's receipt of the initial pleading setting forth the claim for relief. 28 U.S.C. § 1446(b).

In the case at bar, removal was based on the Court's original jurisdiction over this case pursuant to 28 U.S.C. § 1331, since Plaintiff raised an alleged retaliation claim under the First Amendment pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Also, the record shows that the notice of removal was filed on June 6, 2018 (id.), well within 30 days of Defendants' receipt of Plaintiff's complaint. (Id.) Because the Court finds that Defendants have complied with the removal statute and that removal of this action to this Court, a court that would have had original jurisdiction over Plaintiff's First Amendment claim brought pursuant to 42 U.S.C. § 1983 originally in state court, see Zawatsky v. Jeddo Stars Athletic Assoc., Civ. No. 3:16-1725, 2016 WL 4990493, at *3 (M.D. Pa. Sept. 19, 2016)

(citing Sacko v. Greyhound Lines, Inc., 2013 WL 2392906, at *1 (E.D. Pa. May 31, 2013), Plaintiff's motion for remand would be denied.

## IV. LEAVE TO AMEND

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing, the Court finds that affording Plaintiff an opportunity to amend would be futile.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss (Doc. No. 3), deem Plaintiff's motion to remand (Doc. No. 7), withdrawn, and direct the Clerk of Court to close this matter. An appropriate Order follows.

                                             s/Sylvia H. Rambo
                                             SYLVIA H. RAMBO
                                             United States District Judge

Dated: October 29, 2018